**Irving M. GOLDBERG, Stuart E. Goldberg and Hyman Cohen, Plaintiffs,**

v.

**The VILLAGE OF SPRING VALLEY, The Spring Valley Urban Renewal Agency, and Joel Rosenthal, Edward Friedman, Jack Rosenberg, Sheila Reitsky, and Clayton Simmons, individually, Defendants.**

**No. 80 Civ. 3658(DNE).**

United States District Court, S. D. New York.

April 20, 1982.

gram, first under the village and then in SVU-RA from 1976 to June 1979.

OPINION AND ORDER

EDELSTEIN, District Judge:

In this action for reinstatement, or in the alternative for damages, due to the allegedly unconstitutional termination of plaintiffs' employment, the individual defendants who are trustees of the Village of Spring Valley[1] ("Trustees" of the "Village") moved for dismissal or partial summary judgment based upon an absolute legislative immunity from suit under 42 U.S.C. § 1983. The facts of this case are fully set forth in the accompanying opinion filed on this date, and will not be repeated here. *See Goldberg v. Village of Spring Valley*, 538 F.Supp. 641 (S.D.N.Y.1982). Trustees are elected pursuant to the New York State Village Law.[2] On December 3, 1979, at the first session of the newly elected Village government, the Trustees approved actions of the mayor of Spring Valley that resulted in the termination of plaintiffs' employment by the Village or the Spring Valley Urban Renewal Agency. Plaintiffs allege that the individual Trustees were part of a conspiracy to terminate plaintiffs' positions because of plaintiffs' support of opposition candidates in the Spring Valley primary. The Trustees in the instant motion argue that the actions taken by them were as legislators acting in their legislative capacity, and that they are thus entitled to absolute immunity from suit under 42 U.S.C. § 1983. The court, ruling from the bench, granted partial summary judgment for the individual Trustees, and this opinion follows.

I

In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Supreme Court recognized absolute immunity from suit under 42 U.S.C. § 1983 for state legislators acting within the sphere of legitimate legislative activity. In *Lake Country Es-*

Goldberg & Goldberg, Spring Valley, N. Y., for plaintiffs.

Henry T. Berger, New York City, for defendants.

1. The individual Trustee defendants are Edward Friedman, Jack Rosenberg, Sheila Reitsky, and Clayton Simmons.

2. N. Y. Village Law § 3–301 (McKinney).

*tates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Court extended this immunity to regional legislators. The Court, however, expressly left unresolved whether this absolute immunity should be afforded to "individuals performing legislative functions at the purely local level." *Id.* at 404 n. 26, 99 S.Ct. at 1178 n. 26.

This issue has not been decided by the Second Circuit. The Fourth, Fifth and Eighth Circuits, however, addressed this question subsequent to *Lake Country Estates*, and recognized absolute legislative immunity for local legislators. *Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir. 1981); *Bruce v. Riddle*, 631 F.2d 272 (4th Cir. 1980); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir. 1980). This court finds the reasoning in these opinions persuasive.

In *Gorman Towers, Inc. v. Bogoslavsky, supra*, plaintiffs sued the city directors of Fort Smith, Arkansas under § 1983 for enacting an allegedly unconstitutional amendment to the city's zoning ordinance. The district court dismissed plaintiffs' claims for damages against the city directors on the basis of legislative immunity and plaintiffs appealed. The Eighth Circuit affirmed, holding that the city directors were absolutely immune from damage liability for passing the zoning amendment, since that activity was legislative in nature. 626 F.2d at 613–14. The analysis focused on two competing interests:

> The first . . . is the interest in having governmental officials exercise their judgment free of the fear of burdensome and potentially ruinous personal litigation. The second . . . is the interest in checking improper official conduct and in providing wronged individuals with adequate remedies for their injuries.

*Id.* at 612. The court, noting that there were other effective legal remedies to address the allegedly unconstitutional rezoning, and that the electoral process provided restraint from improper conduct, held that the "public good" represented by free and unburdened legislative activity outweighed

the value of a § 1983 damages action as a check on illegal conduct.

*Bruce v. Riddle, supra*, also involved a § 1983 suit for damages resulting from allegedly unconstitutional rezoning. The Fourth Circuit affirmed the district court's dismissal of the complaint as to the individual members of the County Council because of absolute legislative immunity. The Fourth Circuit's analysis was somewhat different from the Eighth Circuit's balancing test in *Gorman Towers*. In *Riddle*, the court employed a historical approach, focusing on the Supreme Court's statements regarding the underpinnings of legislative immunity and the analogous issue of judicial immunity. The court then compared the functions of various positions in the legislative, judicial and executive branches, and the applicable scope of immunity provided those positions. Finding the policies of legislative immunity broadly applicable, the court held legislators of any political subdivision of a state absolutely immune if they are functioning in a legislative capacity. 631 F.2d at 279.

In *Hernandez v. City of Lafayette, supra*, plaintiff's § 1983 challenge was also related to zoning ordinances. The mayor of the City of Lafayette vetoed a city council vote to rezone the plaintiff's property. The district court granted the mayor's and city's motion for summary judgment. The Fifth Circuit reversed as to the city, but affirmed summary judgment as to the mayor, holding that the mayor was acting in a legislative capacity, and that local legislators are entitled to absolute immunity from suit under § 1983.

The *Hernandez* court noted the decisions in *Gorman Towers v. Bogoslavsky* and *Bruce v. Riddle*. However, another panel of the Fifth Circuit, in *Crowe v. Lucas*, 595 F.2d 985, 989 (5th Cir. 1979), had previously held that local legislators possessed only a qualified immunity under § 1983. The *Hernandez* panel overruled the *Crowe v. Lucas* precedent on the basis of intervening contrary authority of the Supreme Court in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). 643

F.2d at 1193. In *Owen,* the Supreme Court rejected the contention that a municipality enjoyed an immunity from damage actions under § 1983 for its unconstitutional acts in discharging an employee. 445 U.S. at 635–57, 100 S.Ct. at 1407–19.

## II

■ In addressing the issue of legislative immunity, these courts have relied upon different factors, which considered together, are as follows: first, the historical basis for the recognition of such immunity; second, the function of the position for which immunity is claimed; and third, the availability of alternative sources of relief assuming the immunity is recognized.

Legislative immunity is deeply rooted in our society. Members of Congress are expressly afforded immunity by the Speech and Debate Clause of the Constitution. U.S.Const. art. I, § 6, cl. 1. Justice Frankfurter, in *Tenney v. Brandhove, supra,* explained the historical basis for such immunity:

> The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries. . . .

> The reason for the privilege is clear. It was well summarized by James Wilson, an influential member of the Committee of Detail which was responsible for the provision in the Federal Constitution. "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence." II Works of James Wilson (Andrews ed. 1896) 38.

341 U.S. at 372–73, 71 S.Ct. at 786. The policy of encouraging free and uninhibited expression to forward the "public good" applies at the local as well as higher levels of government. *See Gorman Towers, Inc.*

*v. Bogoslavsky, supra,* 626 F.2d at 612. As Justice Marshall, in dissenting from the extension of absolute legislative immunity to regional legislators in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra,* stated:

> [T]he majority's reasoning in this case leaves little room to argue that municipal legislators stand on a different footing than their regional counterparts. Surely the Court's supposition that the "cost and convenience and distractions of a trial" will impede officials in the " 'uninhibited discharge of their legislative duty' " applies with equal force whether the officials occupy local or regional positions.

440 U.S. at 408, 99 S.Ct. at 1180 (citations omitted). The policies reflected in the historical recognition of legislative immunity thus apply at the local level.

The second aspect of the immunity analysis examines the function of the position for which absolute immunity is claimed. If the powers being exercised are executive or administrative, officials are entitled to a qualified immunity. *See Butz v. Economou,* 438 U.S. 478, 496–517, 98 S.Ct. 2894, 2905–16, 57 L.Ed.2d 895 (1978); *Scheuer v. Rhodes,* 416 U.S. 232, 238–49, 94 S.Ct. 1683, 1687–92, 40 L.Ed.2d 90 (1974). If, however, the powers are legislative, judicial or prosecutorial, a broader immunity is warranted. *See Owen v. City of Independence, supra,* 445 U.S. at 637–38, 100 S.Ct. at 1408–09. Local legislators, compared with regional, state or federal legislators, may exercise functions that tend to be more executive than policy making. However, in *Lake Country Estates,* the Supreme Court recognized an absolute immunity for regional legislators "to the extent the evidence discloses that these individuals were acting in a capacity comparable to that of members of a state legislature . . . ." 440 U.S. at 406, 99 S.Ct. at 1179. By focusing on the actual capacity in which the legislators were acting the court can limit the absolute immunity to functions which are purely legislative. Thus, the recognition of immunity is not so broad as to shield local legislators when they are functioning in other than a traditional legislative capacity.

The third element of the analysis examines the alternative sources of relief if the immunity is recognized. Here, plaintiffs have available the remedies of damages or reinstatement in their action against the remaining defendants, which are the Village of Spring Valley, the Spring Valley Urban Renewal Agency, and mayor Joel Rosenthal.[3] The Supreme Court's holding in *Owen v. City of Independence* that a municipality is not immune from damage claims under § 1983 ensures that plaintiffs will be able to pursue their action for alleged unconstitutional dismissals. Thus, the recognition of immunity for the Village Trustees will not preclude plaintiffs from maintaining their § 1983 action.

### III

■ Having recognized absolute immunity for the Trustees of the Village of Spring Valley, the question remains whether the allegedly unconstitutional acts of the Trustees were legislative in nature. N. Y. Village Law § 4–412 states the legislative function of the Board of Trustees:

[T]he board of trustees of a village may take all measures and do all acts, by local law, not inconsistent with the provisions of the constitution which shall be deemed expedient or desirable for the good government of the village, its management or business, the protection of its property, the safety, health, comfort, and general welfare of its inhabitants, the protection of their property, the preservation of peace and good order, the suppres-

sion of vice, the benefit of trade, and the preservation and protection of public works. The board of trustees may create by resolution offices, boards, agencies and commissions and delegate to said offices, boards, agencies and commissions so much of its power as it shall deem necessary for effectuating or administering the board of trustees duties and functions.

The acts of the Trustees complained of were the creation of the Department of Housing and Community Development, the transfer of the funds and programs of the Spring Valley Urban Renewal Agency to the Village, and the approval of the appointments of individuals to positions that performed the duties previously performed by plaintiffs. These actions were clearly within the scope of the Trustees' authority under § 4–412. Further, the steps taken by the Trustees were traditional legislative acts, reflecting policy objectives. None of these acts were executive or administrative. The Trustees are therefore entitled to absolute immunity from suit under § 1983.[4]

The pleadings and affidavits of the parties submitted in regard to this motion show that there is no material issue of fact with respect to the claims against these defendants, and that these defendants were acting within their capacity as local legislators in approving the mayor's appointments and in restructuring the Village's housing programs. Thus, partial summary judgment in favor of the individual trustee defendants is granted.

**3.** Mayor Rosenthal did not move for dismissal or summary judgment on the basis of an immunity, either qualified or absolute.

**4.** Plaintiffs seek the remedy of damages, or in the alternative, the injunctive remedy of reinstatement. The Supreme Court, in *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), has held that there is no distinction for purposes of legislative immunity between actions for damages and injunctive relief:

In *Tenney v. Brandhove*, 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951) we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state leg-

islators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief. *Id.* at 732, 100 S.Ct. at 1974. The Second Circuit had previously interpreted *Tenney* to apply to actions for injunctive relief. *Star Distributors, Ltd. v. Marino*, 613 F.2d 4 (2d Cir. 1980). In *Star Distributors*, the court stated that "the justification for legislative immunity against injunctive relief, while somewhat different from that for immunity for damages, is no less compelling." *Id.* at 7. This court's recognition of legislative immunity on the local level therefore encompasses immunity from actions for injunctive relief.