**John C. HERBST**

v.

**Paul T. DAUKAS, et al.**

**Civ. No. H-88-323 (PCD).**

United States District Court, D. Connecticut.

Dec. 15, 1988.

Martha Stone, Connecticut Civ. Liberties Union Foundation, Hartford, Conn., John Williams, Williams & Wise, New Haven, Conn., for plaintiff.

Joel M. Ellis, West Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

On May 19, 1988, plaintiff, a Lieutenant in the Rocky Hill Police Department, filed this action under 42 U.S.C. § 1983 against the Mayor, the Town Manager, and the members of the Town Council of Rocky Hill. Plaintiff challenges his demotion to the position of Sergeant and a pattern of harassment to which he alleges he has been subjected for more than a year as retaliation for his exercise of his first and fourteenth amendment rights in exposing "pervasive racism" within the Rocky Hill Police Department.

On June 28, 1988, defendants moved to dismiss as against the Mayor and members of the Town Council ("Town Council Defendants") on the ground that their status as municipal legislators affords them absolute immunity from damages or injunctive relief. Town Council Defendants contend they are not attacking plaintiff's "harassment" claims at this time, but are asserting the defense of legislative immunity only in regard to their elimination of one Lieuten-

ant's position in the budgetary process which resulted in the "demotion" of plaintiff to Sergeant. *See* Reply Memorandum at 2 n. 1. Town Council Defendants also seek to dismiss all pendent state claims.

*Facts*

In his complaint, the material allegations of which are taken as true for the purposes of this motion under Fed.R.Civ.P. 12(b)(6), plaintiff alleges defendants engaged in a course of conduct intended to retaliate against and punish him for his comments regarding the existence of racism within the Rocky Hill Police Department in response to an order to explain his actions of April 7, 1987, in calling back a police cruiser that had been dispatched to investigate the activities of two "Puerto Rican looking fellows." Complaint, ¶¶ 14, 16, 17, 20(a)–(r), 23, 24. This retaliatory conduct included a demand that plaintiff publicly apologize for "labeling the community as racist," *id.*, ¶ 20(g); a "suggestion" to the Chief of Police that plaintiff be removed from "daytime administrative duties and placed on a rotating shift," *id.*, ¶ 20(d), (n); a directive to the Chief of Police that the new police vehicle assigned to plaintiff be taken away and "used as [a] line patrol vehicle by non-supervisory personnel," *id.*, ¶ 20(i), (p); and defendants' unanimous order that "plaintiff be demoted from the position of Lieutenant to the position of Sergeant effective July 1, 1988," *id.*, ¶ 23.[1] Plaintiff alleges that these actions were intended to deprive him of his constitutional rights protected by the first and fourteenth amendment. *Id.*, ¶ 8.

*Discussion*

### A. *Dismissal Standard*

■ A motion to dismiss tests the sufficiency of plaintiff's complaint. *Green v. Maraio*, 722 F.2d 1013, 1015 (2d Cir.1983). In making this determination, the court must accept as true all allegations of the

1. Plaintiff moved for a preliminary injunction to halt his demotion from Lieutenant to Sergeant, which was to take effect on July 1, 1988. On June 21, 1988, at a hearing on such motion, a resolution of the Town Council dated June 20, 1988, was read into the record. The Town Council voted to "hold in abeyance any imple-

mentation of its prior budgetary decision to appropriate funds for only two lieutenant positions" until the rendition of a final judgment on the merits of this suit. *See* Transcript of Hearing at 2. Thus, this court denied the motion without prejudice as moot. *Id.* at 4.

complaint and draw all reasonable inferences in favor of the pleader. *See Doyle v. St. Paul Fire & Marine Ins. Co.,* 583 F.Supp. 554, 557 (D.Conn.1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This principle is applied with particular strictness when the plaintiff contends there has been a violation of his civil rights. *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### B. *Legislative Immunity*

■ In *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Supreme Court held that state legislators were absolutely immune from suits for damages under § 1983. The Court reviewed the common law tradition of legislative freedom from damage suits arising out of the discharge of legislative duty and concluded that Congress did not intend to abrogate this freedom. *Id.* at 372–76, 71 S.Ct. at 786–88. Further, the Court noted that "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Id.* at 377, 71 S.Ct. at 788. Thus, "[t]he claim of an unworthy purpose does not destroy the privilege." *Id.*

This doctrine of absolute immunity was extended to appointed regional members acting in a legislative capacity for an agency created by a compact between two states. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). The Court found that the reasoning of *Tenney* was "equally applicable to federal, state, and regional legislators." *Id.* at 405, 99 S.Ct. at 1179. However, the Court expressly declined to decide whether the doctrine of absolute immunity applied to "individuals performing legislative functions at the purely local level." *Id.* at 404 n. 26, 99 S.Ct. at 1179 n. 26.

However, since *Lake Country,* several circuits have extended legislative immunity to local legislators acting in a legislative capacity. *See Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983); *Espanola Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1982); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 445 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir.1980); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980). While the Second Circuit has not yet addressed this issue, *see United States v. City of Yonkers,* 856 F.2d 444, 456 (2d Cir.1988), at least two district judges within this circuit have held that the doctrine of absolute legislative immunity protects local legislators from suit for actions taken in their legislative capacity. *See Dusanenko v. Maloney,* 560 F.Supp. 822 (S.D.N.Y.1983), *aff'd on other grounds,* 726 F.2d 82 (2d Cir.1984); *Goldberg v. Village of Spring Valley,* 538 F.Supp. 646 (S.D.N.Y.1982). In these cases, the courts found no distinction between the need to protect legislative decision-making at the state or regional level and such a need at the municipal level. "Those who are charged with the conduct of government in our cities and towns must have that same freedom to carry out their responsibilities as their consciences demand, free from the fear that political disagreements may result in legal actions." *Dusanenko,* 560 F.Supp. at 827.

Although the doctrine of immunity does limit the recourse of those wronged by unlawful legislative acts, it reflects the belief that the legislative process is better served by limiting recourse and not exposing legislators to the burdens of defending a lawsuit and possible liability. The Supreme Court in *Tenney* emphasized the role of the electoral process as a means for discouraging or correcting legislative abus-

es. *Tenney*, 341 U.S. at 378, 71 S.Ct. at 789. In addition, the case for absolute immunity of local legislators is buttressed by the absence of any immunity for municipalities under § 1983 for their unconstitutional conduct. *See, e.g., Goldberg*, 538 F.Supp. at 650; *see also Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Local governing entities can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035–36. This absence of municipal immunity provides an additional check on unconstitutional acts of municipal legislators, as well as an effective remedy for wronged individuals. *See Gorman Towers*, 626 F.2d at 613; *Rateree v. Rockett*, 852 F.2d 946, 951 n. 3 (7th Cir.1988).

█ Having determined that absolute immunity extends to local legislators, it is necessary to determine whether the Town Council Defendants were "acting within the sphere of legitimate legislative activity" when they eliminated one Lieutenant's position from the town budget resulting in plaintiff's "demotion." *Tenney*, 341 U.S. at 376, 71 S.Ct. at 788. *See also Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 731–34, 100 S.Ct. 1967, 1974–76, 64 L.Ed.2d 641 (1980). Plaintiff's complaint alleges that on May 16, 1988, the Town Council Defendants unanimously ordered that plaintiff be demoted from the position of Lieutenant to the position of Sergeant effective July 1, 1988. Complaint, ¶ 23. Plaintiff alleges that his demotion was in retaliation for the exercise of his constitutional rights. *Id.*, ¶ 24. In addition, plaintiff alleges that the Town Council Defendants "occupy the highest policy and administrative positions in the Town of Rocky Hill and the actions of defendants, carried out in their official capacities, are the actions and policies of the Town of Rocky Hill, Connecticut." Complaint, ¶ 12.[2]

█ The Town Council Defendants contend that plaintiff's demotion was the result of legislative budgetary action and that the elimination of one Lieutenant's position from the budget was within their delegated powers. Plaintiff, however, does not challenge the authority of the Town Council to act upon appropriations for the Police Department, but seeks only to enjoin his demotion as an illegal act in retaliation for his reporting and documenting the existence of racism within the department. *See* Plaintiff's Memorandum at 4. Plaintiff does not appear to challenge the Town Council Defendants' assertion that his "de-

**2.** Plaintiff argues that the claims asserted against the Town Council Defendants in their official capacities are in fact claims asserted against the Town of Rocky Hill itself. The Town Council Defendants argue that the Town of Rocky Hill is not a named defendant in this action. *See* Fed.R.Civ.P. 10(a) (caption of the complaint shall include the names of all parties). They assert that suit against the Town Council Defendants in their "official" capacities only means that they incur no "personal" liability if found liable in such capacity, since the liability is that of the town. Thus, they claim that this does not mean they are subject to injunctive relief in their official capacity in regard to any "demotion" resulting from eliminating one Lieutenant's position.

Given the liberal federal pleading standard, the complaint alleges a cause of action against the Town of Rocky Hill itself. *See Detz v. Hoover*, 539 F.Supp. 532, 534–35 (E.D.Pa.1982). As the Supreme Court noted in *Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55, official capacity suits generally represent an alternative way of pleading an action against an entity of which the officer is an agent. In addition, a judgment against a public servant in his official capacity imposes liability on the entity that he represents provided the public entity receives notice and an opportunity to respond. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Plaintiff's complaint places the Town of Rocky Hill on notice that the challenged actions of the Town Council Defendants in their official capacities are the actions and policies of the town. However, the court should not be required to assume that the Town of Rocky Hill is a defendant in this action. *See Detz*, 539 F.Supp. at 535. Accordingly, plaintiff shall, within two (2) weeks from the date of this ruling, amend his complaint to name the Town of Rocky Hill as a party defendant if that is in fact his theory of the case.

motion" was the result of an unanimous decision by the Town Council. Indeed, such is reasonably inferred from plaintiff's complaint. *See* Complaint, ¶ 23. Rather, plaintiff contends that the challenged actions of the Town Council are administrative, not legislative in nature, and that the doctrine of legislative immunity only protects legislators from suit in their individual capacities as opposed to their official capacities. Each of these arguments is considered below.

The elimination of one Lieutenant's position was clearly a legislative action. The action was undertaken pursuant to an unanimous vote of the Town Council Defendants at a Town Council meeting. Further, such action was within the scope of powers delegated to the municipality, Conn. Gen.Stat. § 7–148(c)(2), (4), (5)(C). *See, e.g., Dusanenko*, 560 F.Supp. at 827.

While the decision to hire or fire a municipal employee is generally considered an administrative or managerial decision, *see Detz*, 539 F.Supp. at 543, the abolition of a municipal position has consistently been held to constitute a legislative act. *See Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir.1983); *Ditch v. Board of County Comm'rs of County of Shawnee*, 650 F.Supp. 1245, 1250 (D.Kan.1986); *Skrocki v. Caltabiano*, 568 F.Supp. 703, 706 (E.D. Pa.1983). In *Rateree*, 852 F.2d 946, the Seventh Circuit held that the defendant City Commissioners were absolutely immune from a suit which challenged their legislative actions. *Id.* at 951. There, defendants, members of the City Council, had voted to eliminate funding for plaintiffs' positions. *Id.* at 947–48. Plaintiffs claimed that they were harassed and eventually discharged because of their political views in violation of their first and fourteenth amendment rights. *Id.* at 948. The court agreed with the district court that the elimination of a position in the budgetary process was a "quintessential legislative function, reflecting the legislators' ordering of policy priorities in the face of limited financial resources." *Id.* at 950. That someone loses their job does not convert a legislative budgetary cut into an administrative employment decision. *Id.* Further,

the court noted that "[a]dmittedly, a particular legislator may vote for legislation for seemingly improper reasons; nevertheless, the rule of absolute immunity shields this conduct." *Id.* at 951. Thus, the "political decision-making inevitably involved in exercising budgetary restraint strikes at the heart of the legislative process and is protected legislative conduct." *Id.* at 950–51. Nonetheless, while absolute immunity precluded recovery from individual legislators who may have acted for wrongful motivations, plaintiffs did in fact recover against the city. *Id.* at 951 & n. 3.

Having determined that the Town Council Defendants are entitled to absolute immunity from suit for their legislative actions, even though they resulted in the "demotion" of plaintiff, it is now necessary to determine the scope of such immunity. Plaintiff asserts that absolute legislative immunity only protects legislators from "personal" liability. Plaintiff claims that the Town Council Defendants fail to recognize the distinction between a town officer's liability in his official capacity and liability in his individual capacity.

In response, Town Council Defendants argue that plaintiff's contention would place them in an untenable position, i.e., although they have legislative immunity from testifying as to their motives for passing a budget which eliminated one Lieutenant's position, they would be forced to relinquish that immunity in order to properly defend the case. Thus, they assert that legislative immunity extends to suits against them in their official and individual capacities.

A suit against a municipal officer in his individual capacity seeks to impose liability for his actions taken under color of state law. *See, e.g., Scheuer*, 416 U.S. at 237–38, 94 S.Ct. at 1686–87. In contrast, official capacity suits are treated as suits against the government entity itself. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). When it comes to defenses to liability, an official sued in his individual capacity may be able to assert personal

immunity defenses, such as legislative immunity. *Id.* at 166–67, 105 S.Ct. at 3105–06. However, an official sued in his official capacity can only raise a defense held by the entity itself, such as sovereign immunity. *See Healy v. Town of Pembroke Park,* 643 F.Supp. 1208, 1213 (S.D.Fla. 1986). The doctrine of absolute legislative immunity protects individuals acting within the bounds of their legislative duties, not the governing bodies on which they serve. *See Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 133 (5th Cir.1986). Thus, the Town Council Defendants are only entitled to assert legislative immunity as to claims against them in their individual capacity. *See, e.g., Bruce,* 631 F.2d at 279. In addition, it has consistently been held that such legislative immunity protects legislators individually from suit under § 1983 for injunctive as well as monetary relief.[3]

Limiting the doctrine of absolute legislative immunity to individual capacity actions is consistent with the rationale behind the extension of legislative immunity. " 'When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.' " *Rateree,* 852 F.2d at 949, quoting *Forrester v. White,* —— U.S. ——, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). The privilege protects legislators from the cost and inconvenience and distractions of defending a suit, as well as the hazard of a personal judgment against them based upon a jury's speculation as to motives. *See, e.g., Tenney,* 341 U.S. at 377, 71 S.Ct. at 788. Suit against a public servant "in his official capacity" imposes liability on the entity he represents provided that the public entity receives notice and an opportunity to respond. *Brandon,* 469 U.S. at 471–72, 105 S.Ct. at 878.

Town Council Defendants argue that the Fourth Circuit's opinion in *Schlitz v. Commonwealth of Virginia,* 854 F.2d 43 (4th Cir.1988), supports their contention that legislative immunity should extend to suit against them in their official capacities. In *Schlitz,* plaintiff sued the Commonwealth of Virginia claiming that the failure of the General Assembly to re-elect him as a Circuit Judge constituted age discrimination. The court characterized the issue before it as whether the Assembly's purported motives for declining to re-elect plaintiff were a pretext for age discrimination. *Id.* at 45. The court found that the purpose behind the doctrine of legislative immunity was to protect legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves. *Id.* at 45. The court concluded that the Commonwealth would be unable to defend the action unless the legislators testified as to their reasons for declining to re-elect plaintiff. *Id.* Thus, the court held that suit against the Commonwealth was barred by the doctrine of legislative immunity.

Town Council Defendants' reliance on *Schlitz* is premised on the extension of its rationale to local governing bodies. *Schlitz* was based in part on the federalism implications of requiring state legislators to testify in federal court as to their legislative motives and the extent an injunction issued by a federal court requiring the General Assembly to elect plaintiff would intrude into the state legislative process. The Second circuit has stated that "[e]ven if we assume for purposes of this appeal that City Council members enjoy the same immunity available to state legislators, we would seriously doubt that such immunity insulates them from district court orders requiring them to comply with remedial decrees redressing constitutional violations." *City of Yonkers,* 856 F.2d at 456. *See also Griffin v. County School Bd.,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). As noted *supra,* the primary rationale for absolute legislative immunity is the adverse effect exposure to the burdens of defense and possible liability would have

---

**3.** *See Supreme Court of Virginia,* 446 U.S. at 732 & n. 10, 100 S.Ct. at 1974 & n. 10; *Star Distributors, Ltd. v. Marino,* 613 F.2d 4, 6 (2d Cir.1980); *Latino Political Action Committee v. City of Boston,* 581 F.Supp. 478, 482 (D.Mass.1984); *Goldberg,* 538 F.Supp. at 650 & n. 4.

on the exercise of legislative discretion. In addition, courts have consistently noted that the absence of municipal immunity under *Owen*, 445 U.S. 622, 100 S.Ct. 1398, and *Monell*, 436 U.S. 658, 98 S.Ct. 2018, buttresses the case for extension of absolute legislative immunity to local legislators. *See, e.g., Rateree*, 852 F.2d at 951 n. 3; *Searingtown Corp. v. Inc. Village of North Hills*, 575 F.Supp. 1295, 1298 (E.D. N.Y.1981). Claims against the individual legislators have been dismissed on the basis of legislative immunity, leaving the suit against the municipality itself to continue even where the motives behind the legislation were at issue. *See, e.g., Rateree v. Rockett*, 630 F.Supp. 763, 772 (N.D.Ill. 1986). Town Council Defendants' argument would ask the court to extend this immunity so far that it would remove one of the justifications supporting the application of the doctrine to local legislators in the first place. Thus, the doctrine of legislative immunity must extend only to suit against the Town Council Defendants in their individual capacity for acts taken in their legislative capacity.[4]

*Conclusion*

For the foregoing reasons, the Town Council Defendant's motion to dismiss is granted in part and denied in part. Insofar as plaintiff claims judgment against the Town Council Defendants in their individual capacities for their part in the legislative action resulting in the "demotion" of plaintiff, such claim is dismissed on the basis of legislative immunity. Further, any pendent state claims asserted against the Town Council Defendants in their individual capacity seeking relief based on the above legislative action are also dismissed.

SO ORDERED.

---

**4.** It should also be noted that this holding does not decide the ability of defendants to assert evidentiary privilege, Fed.R.Evid. 501, or other protection against discovery, if such is deemed appropriate, aimed at delving into their legislative motives. *See. Searingtown*, 575 F.Supp. at 1298–99.