Kenneth D. GOLDBERG

v.

Dana WHITMAN, Jr., as Town
Manager, et al.

Civ. No. H–88–840(AHN).

United States District Court,
D. Connecticut.

Aug. 8, 1989.

Martin S. Stillman, Stillman & Dicara,
Rocky Hill, Conn., for plaintiff.

William S. Zeman, Joel M. Ellis, West
Hartford, Conn., for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

NEVAS, District Judge.

Plaintiff has brought this 42 U.S.C. Section 1983 action against the Town Manager, Mayor, members of the Town Council of Rocky Hill (collectively, the "individual defendants") in their official capacities and the Town of Rocky Hill for eliminating his position as a supernumerary police officer. He alleges that the defendants eliminated his position and subjected him to various acts of harassment in retaliation for his support of the Rocky Hill Police Chief in a controversy that involved allegations of "pervasive racism" asserted against the town's police department by one of its lieutenants. This action is now before the court on the defendants' motion to dismiss for lack of subject matter jurisdiction. Rule 12(b)(1), Fed.R.Civ.P. Movants contend that the decision to eliminate plaintiff's supernumerary police officer position was made in the exercise of their legislative capacity; therefore, they are protected by absolute legislative immunity. Plaintiff counters that legislative immunity does not extend to suits against local officials sued solely in their official capacities.

### Facts

In his complaint, the plaintiff makes the following material allegations, which for purposes of this Rule 12(b) motion are to be construed liberally.[1] The plaintiff alleges that the defendants undertook a campaign of harassment designed to retaliate against him for his apparent support of the position taken by the Rocky Hill Police Chief in a controversy in which charges of "pervasive racism" were lodged against the department. The incident occurred when a police lieutenant with the department recalled a police cruiser that had been dispatched to investigate the activities of two "suspicious looking" fellows who were described simply as "Puerto Ricans." Complaint, para. 5. When asked later to explain his action, the lieutenant expressed his view that "pervasive racism" existed within the Rocky Hill Police Department. Id., para. 6. At a meeting before the Town Council, the Chief of Police supported the lieutenant and stated that he would not discipline him. Id, para. 7. Plaintiff reportedly expressed his support of the Chief's handling of the matter. Id., para. 8.

---

1. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In retaliation for plaintiff's show of support, plaintiff became the subject of intentionally demeaning directives from the Town Manager, such as being excluded from plainclothes detail. *Id.*, para. 10. He was also stripped of his title of "Commander," which plaintiff had enjoyed for two and one-half years. *Id.*, para. 11. In addition, the Town Council passed two separate resolutions limiting the hours that supernumerary police officers were permitted to work per week. *Id.*, para. 14 and 15. Finally, the defendants eliminated the position of supernumerary police officer through the enactment of budgetary legislation. *Id.*, para. 16.

### Discussion

Goldberg has sued the Town of Rocky Hill and the individual defendants in their official capacities claiming that the elimination of his position as a supernumerary police officer was retaliatory and in violation of his First and Fourteenth Amendments secured by 42 U.S.C. Section 1983, Article 1 of Connecticut's Constitution, and the Town of Rocky Hill Charter, ordinance and regulation. The individual defendants seek dismissal of this action as to them on the ground that plaintiff's claims are barred by the doctrine of absolute legislative immunity. They argue that since they took the challenged action pursuant to their budgetary lawmaking authority, they are absolutely immune from suit. Before determining the applicability of the legislative immunity doctrine to this case, it is necessary to explore briefly the legal landscape upon which the instant action and the immunity defense have been grounded.

Section 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Monell v. Dept. of Soc. Serv. of City of New York*, the Supreme Court concluded that local government units are "among those persons to whom section 1983 applies.... [and] can be sued directly under section 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). In *Monell*, the plaintiffs were a class of female employees of the Department of Social Services and of the Board of Education of the City of New York suing under section 1983 for injunctive and monetary relief for being forced as a matter of official policy to take unpaid leaves of absence when pregnant but before such leaves were required for medical reasons. The complaint named as defendants the Board and its chancellor, and the City of New York and its Mayor. The individual defendants were sued solely in their official capacities.

As a corollary to its holding that local governments may be sued under section 1983, the Supreme Court expressly recognized that "local government officials sued in their official capacities are [also] 'persons' under section 1983 in those cases in which, as here, a local government would be suable in its own name." *Id.* at 690 n. 55, 98 S.Ct. at 2035 n. 55. In so doing, it found that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," particularly at the local level "where Eleventh Amendment considerations do not control [the] analysis." *Id.*

Although the Court in *Monell* did not squarely address the question of whether municipalities are entitled to some form of official immunity from section 1983 liability, it did hold that "municipal bodies cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under section 1983 'be drained of meaning.'" *Id.* at 701, 98 S.Ct. at 2041 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 248, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90

(1974)). In *Owen v. City of Independence, Mo.*, the Supreme Court confronted the question whether local governments "should be afforded some form of official [less than absolute] immunity in section 1983 suits." 445 U.S. 622, 624, 100 S.Ct. 1398, 1402, 63 L.Ed.2d 673, *reh'g denied*, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980). Owen brought a section 1983 action against the City of Independence and city officials in their official capacities for being discharged as police chief in violation of his constitutional rights. The Court there rejected the asserted defense of qualified good faith immunity.

In reaching this conclusion, the Court explained why the immunities from section 1983 suits which have been found to exist for other governmental actors are not present at the municipal level.

> In each of the [ ] cases [where we found government officials to be immune] our finding of section 1983 immunity 'was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.' *Imbler v. Pachtman*, [424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976)]. Where the immunity claimed by the defendant was well established at common law at the time section 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity. But there is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of section 1983 that would justify the qualified immunity accorded the city of Independence by the Court of Appeals.

*Owen*, 445 U.S. at 638, 100 S.Ct. at 1409. Whatever immunity municipalities may have enjoyed at common law, the Court explained, was "obviously subrogated" by the enactment of section 1983. *Id.* at 647, 100 S.Ct. at 1413.

> By including municipalities within the class of 'persons' subject to liability for violations of the Federal constitution and laws, Congress—the supreme sovereign on matters of federal law—abolished

whatever vestige of the State's sovereign immunity the municipality possessed.

*Id.* at 647–48, 100 S.Ct. at 1413–14.

The Court likewise accorded no immunity to the municipal officials sued in their official capacities. It explained that in the cases where individual defendants were held to be immune from suit,

> [the] government officers had been sued in their individual capacities, and the immunity served to insulate them from personal liability for damages. Here, in contrast, only the liability of the municipality itself is at issue, not that of its officers, and in the absence of an immunity, any recovery would come from public funds.

*Id.* at 638 n. 18, 100 S.Ct. at 1409 n. 18. Therefore, the Court noted later in the opinion, the concerns justifying official immunity from *personal* liability "are less compelling, if not wholly inapplicable, when the liability of the municipal entity is at issue." *Id.* at 653, 100 S.Ct. at 1416.

In the present case, the defendants argue that legislative immunity protects them whether or not they are being sued in their individual capacities and whether or not their personal liability is at stake. They cite authorities which seemingly hold that the doctrine of legislative immunity makes no distinction between individual capacity and official capacity actions when applied to state officials. *See Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Star Distrib., Ltd. v. Marino*, 613 F.2d 4 .(2d Cir.1980) ("*Star*"). Therefore, they ask, "[w]hat is so precious about an ability to sue a town that to preserve it requires the sacrifice of official legislative immunity?" Memorandum in Support of Motion to Dismiss ("Defendants' Brief") at 13.

Defendants may not have raised this question nor perhaps even the immunity defense had they fully considered the significance of *Monell* and *Owen*. As the discussion above suggests, the teachings of *Monell* and *Owen* establish that municipalities and, by extension, municipal officials

sued in the official capacities are not entitled to the immunities that have been granted to governmental actors at the state and federal levels. Section 1983 abrogated whatever immunity previously existed for municipal entities. *See Owen*, 445 U.S. at 647–48, 100 S.Ct. at 1413–14. The result is not different simply because the plaintiff has named municipal officials as defendants in their official capacities in lieu of— or in this case, in addition to—the municipal entity itself.

The Supreme Court in *Kentucky v. Graham* expressly recognized that the distinction between official capacity and personal capacity actions does determine the types of immunity available to an individual defendant:

> When it comes to defenses to [section 1983] liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. [citations omitted]. *In an official-capacity action, these defenses are unavailable. Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).... The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985)(emphasis added). *See also Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129, 134 (5th Cir. 1986)(Rubin, C.J.)(If individual members of local School Board "are named defendants only in their official capacities, neither qualified nor absolute immunity would apply since the individual Board members would not be threatened by personal liability."); *Herbst v. Daukas*, 701 F.Supp. 964 (D.Conn.1988)(Dorsey, J.)(doctrine of legislative immunity extends to local officials sued in their individual capacities but not to same officials sued in their official capacities).

Defendants rely upon *Supreme Court of Virginia* and *Star* "for the rule that absolute legislative immunity does apply to suits brought against legislators in their *official* capacities." Defendants' Brief at 9 (emphasis in oridinal). In advancing this argument, they focus upon the the public policy rationale frequently referred to in the application of legislative immunity that "legislators engaged 'in the sphere of legitimate legislative activity,' *Tenney v. Brandhove*, [341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)], should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Supreme Court of Virginia*, 446 U.S. at 732, 100 S.Ct. at 1974 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967)). Both *Supreme Court of Virginia* and *Star* emphasize the latter basis for granting legislative immunity— i.e. that legislators should not be forced "to divert their time, energy, and attention from their legislative tasks to defend the litigation"[2]—in holding that the defendant state officials were immune from the injunctive and declaratory actions brought against them. *See Supreme Court of Virginia*, 446 U.S. at 733, 100 S.Ct. at 1975; *Star Distrib.*, 613 F.2d at 7. In those cases, the individual defendants were sued in both their personal and official capacities and were still accorded absolute immunity.

For reasons already suggested, those holdings are not analogous to the instant matter. Those cases involved *state* entities which enjoy sovereign immunity based on the eleventh amendment. "[T]he Eleventh Amendment bars a damages action against a State in federal court.... This bar remains in effect when state officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169, 105 S.Ct. at 3107 (citing *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Section 1983 did not abrogate a state's eleventh amendment immunity, *id.* n. 17

2. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975).

(citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman,* 415 U.S. at 651, 94 S.Ct. at 1347), as it did abrogate existing municipal immunity. *See Owen,* 445 U.S. at 647–48, 100 S.Ct. at 1413–14. Thus, *Supreme Court of Virginia* and *Star* applied sovereign rather than legislative immunity when they held that the state entities and their officials sued in their official capacities were immune from suit.

For the reasons stated above, the defendants' motion to dismiss is denied.

SO ORDERED.