626 F.2d 607
 GORMAN TOWERS, INC. and James Lambeth, Appellants,
v.
Leonard BOGOSLAVSKY; Gerald D. Martin; George Jones; Art
Robertson, III; Eugene Blackwell; H. L. "Bud" Johnson;
Stephen D. Lease; Ellis Yoes; H. Clay Robinson; E. Clyde
Goines and Shelton Clark, Appellees.
 No. 79-1760.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 17, 1980.
Decided July 22, 1980.
 
 Sam Sexton, Jr., Fort Smith, Ark., for appellants.
 Jerry L. Canfield (argued), Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., on brief, for appellees, Bogoslavsky, et al.
 H. Clay Robinson, Pryor, Robinson, Taylor & Barry, Fort Smith, Ark., for appellees, Yoes, et al.
 Before STEPHENSON, Circuit Judge, KUNZIG,* Court of Claims Judge, and McMILLIAN, Circuit Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Gorman Towers (a developer) and James Lambeth (an architect) appeal the dismissal of their damage claims under 42 U.S.C. § 1983. The complaint named as defendants: (1) the city directors of Fort Smith, Arkansas, (2) the Fort Smith City Administrator, (3) a group of landowners who opposed a housing project proposed by Gorman Towers, and (4) the landowners' attorney. The district court[1] dismissed the claim against the public officials on the basis of legislative immunity and dismissed the claim against the private individuals on the basis of a First Amendment immunity. We affirm.
 
 
 2
 The gravamen of the complaint is that appellants planned to build an apartment complex on a particular site in Fort Smith, and that Fort Smith city officials and residents conspired to prevent construction of the proposed complex through enactment of an unconstitutional amendment to the city's zoning ordinance. The zoning amendment was enacted by the city's Board of Directors. We are told without contradiction that the Board's seven members are elected and that they exercise the city's legislative and executive authority.
 
 
 3
 The principal allegations of the complaint are as follows. Gorman Towers planned to build a 150-unit high-rise apartment complex to house persons who are elderly or physically handicapped. On or about November 18, 1977, Gorman Towers acquired an option to buy about nine acres in the Sutton Estates subdivision in Fort Smith,[2] an area that for sixteen years had been zoned to permit multi-family housing units of the kind Gorman Towers contemplated. Believing that the apartment complex would comply with all city housing regulations, Gorman Tower officers proceeded to contract for the necessary professional services.
 
 
 4
 Trouble began, however, in the spring of 1978. In that period City Director Bogoslavsky falsely stated that construction work would be performed by an out-of-town company. Defendants also falsely stated or implied that the new project would cause flooding, lower residential property values, and be inhabited by black persons drawn out of a notoriously delapidated housing project in another section of Fort Smith.
 
 
 5
 Matters took another turn in early August, when H. Clay Robinson, an attorney representing landowners residing near the site of the proposed complex, petitioned the Fort Smith Planning Commission to rezone the land on which the complex was to be built from multi-family to single-family and duplex. The Commission rejected the petition. Shortly thereafter, the complaint alleges, the city directors met secretly with City Administrator Lease and agreed that no building permit would be issued to Gorman Towers, notwithstanding Gorman Towers' compliance with all city building requirements. This meeting was at the instigation of Lease, attorney Robinson, and Robinson's client Yoes.
 
 
 6
 On August 16, Robinson petitioned the Board of Directors to reverse the Planning Commission and rezone the Gorman Towers site from multi-family to single-family and duplex. The Board granted this petition on September 6, 1978, several of the defendants (City Directors Robertson and Martin and attorney Robinson) stating the rezoning was to block the Gorman Towers project.
 
 
 7
 Appellants claim these actions deprived them of equal protection under the Fourteenth Amendment, and bring a pendent common law claim sounding in defamation. Appellants sought over $1,700,000 in actual and punitive damages.[3]
 
 
 8
 The district court dismissed the complaint as to all defendants upon the following analysis. The court first observed that "(t)hough plaintiffs urged at oral argument that defendants conspired to illegally deprive plaintiffs of a building permit, we note that plaintiffs never applied for a building permit and never had their application rejected. The only action which is properly the subject of this action, therefore, is the zoning ordinance." Gorman Towers, Inc. v. Bogoslavsky, No. 78-2121, slip op. at 4 (W.D.Ark. Aug. 28, 1979). The court reasoned that the city officials were absolutely immune from personal liability because "the members of the Fort Smith City Board of Directors were acting in a legislative capacity when they enacted the city ordinance which rezoned the plaintiffs' property as to keep the (general) area a residential area consisting of single-family dwellings or duplexes." Id. at 6-7. The court reasoned that
 
 
 9
 The action against Stephen D. Lease, who is the City Administrator, must also be dismissed. If Lease was allowed to vote on the zoning ordinance, he is entitled to the same absolute, legislative immunity afforded other members of the Board of Directors. If he did not vote on the zoning ordinance, he cannot be said to have committed any act which affected the plaintiffs.
 
 
 10
 Id. at 7-8. The private landowners and the attorney they hired to represent them were also held absolutely immune because
 
 
 11
 (t)o hold that they are liable for petitioning the City Board of Directors to rezone the property to R3-single family and duplexes, would violate the First Amendment. The defendant, H. Clay Robinson, also cannot be held liable as he was counsel for Yoes, Goines and Clark, hired to assist them in petitioning for the zoning change.
 
 
 12
 Id. at 7. In the absence of a federal claim, the pendent claim was also dismissed. Id. at 8.[4]
 
 
 13
 Reading the complaint liberally and taking its allegations as true, it is apparent that the city directors' rezoning was without rational basis and therefore deprived appellants of property without the due process or equal protection guaranteed them by the Fourteenth Amendment. See, e. g., Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). Appellants' claim thus falls within the expansive wording of 42 U.S.C. § 1983, which affords a damage remedy against "every person" who, under color of state law, deprives another of constitutional rights.
 
 I. Immunity of City Officials
 
 14
 Notwithstanding the unqualified nature of its language, section 1983 was not intended to abrogate the federal common law immunities enjoyed by persons performing certain governmental functions. See Owen v. City of Independence, 445 U.S. 622, 637, 100 S.Ct. 1398, 1408-09, 63 L.Ed.2d 673 (1980). Official immunities are of two types: absolute and qualified. See generally id. at 1408-09 (noting absolute immunities for legislators, judges, and prosecutors, qualified immunities for prison officials, state hospital administrators, school board members, and governors and other executive officers). Absolute immunity defeats a damage suit at the pleading stage, once it appears the actions complained of were within the immunity's scope; qualified immunity is available only if the evidence shows that those actions were taken in good faith, i. e., with a reasonable belief that they were lawful. Imbler v. Pachtman, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).
 
 
 15
 The official immunity question in this case is whether the city directors were absolutely immune with respect to their enactment of the allegedly unconstitutional zoning amendment. Building upon the district court's holding that the directors' rezoning was a legislative act[5] we begin with the proposition that state and regional legislators have an absolute federal common law immunity from liability for damages occasioned by their legislative acts, an immunity which Congress left undisturbed with its passage of the civil rights provision now codified at 42 U.S.C. § 1983. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (absolute immunity for members of state-created regional land planning agency acting in legislative capacity); Tenney v. Brandhove, 341 U.S. 367, 376-78, 71 S.Ct. 783, 788-89, 95 L.Ed. 1019 (1951) (absolute immunity for state legislators). Cf. Supreme Court of Virginia v. Consumers Union, --- U.S. ----, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (justices acting in legislative capacity have absolute immunity from injunctive and declaratory relief as well as from damages). Appellants seek to distinguish these cases and argue that absolute legislative immunity should not extend to the purely local level of government.[6] Alternatively, appellants argue that, notwithstanding an absolute legislative immunity, defendants also injured them by actions that were not performed in a legislative capacity.
 
 
 16
 In determining the breadth of federal common law immunities, the Supreme Court has accommodated two competing interests. The first, asserted by defendants, is the interest in having governmental officials exercise their judgment free of the fear of burdensome and potentially ruinous personal litigation. The second, asserted by plaintiffs, is the interest in checking improper official conduct and in providing wronged individuals with adequate remedies for their injuries. See, e. g., Butz v. Economou, 438 U.S. 478, 501-03, 98 S.Ct. 2894, 2907-09, 57 L.Ed.2d 895 (1978); Imbler v. Pachtman, supra, 424 U.S. at 422-29, 96 S.Ct. at 991-94; Wood v. Strickland, 420 U.S. 308, 319-21, 95 S.Ct. 992, 999-1000, 43 L.Ed.2d 214 (1975); Scheuer v. Rhodes, 416 U.S. 232, 242-47, 94 S.Ct. 1683, 1689-92, 40 L.Ed.2d 90 (1974). See also Note, The Proper Scope of the Civil Rights Acts, 66 Harv.L.Rev. 1285, 1295 n.54 (1953).
 
 
 17
 The Supreme Court emphasized the first of these interests in advancing a rationale for absolute legislative immunity in Tenney v. Brandhove :
 
 
 18
 Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.
 
 
 19
 341 U.S. at 377, 71 S.Ct. at 788. With respect to this "public good" rationale, we perceive no material distinction between the need for insulated legislative decisionmaking at the state or regional level and a corresponding need at the municipal level. Indeed, the nature of municipal government may make the need to quell a legislator's fear of personal retribution particularly compelling.
 
 
 20
 Because municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation. Particularly in the area of land use, where decisions may have an immediate quantifiable impact on both the value and development of property, local legislators should be free to act solely for the public good without the specter of personal liability with the passage of each zoning ordinance.
 
 
 21
 Ligon v. Maryland, 448 F.Supp. 935, 947 (D.Md.1977).
 
 
 22
 Appellants argue, however, that civil liability for city directors is necessary to deter improper official conduct. Appellants emphasize that the Fort Smith Board of Directors consists of only seven persons, is unicameral rather than bicameral, and exercises the executive as well as the legislative authority of the city. Appellants contend that because municipal government in Fort Smith thus lacks some of the inherent restraints that customarily operate at the state level of government, municipal legislators should not receive the absolute immunity accorded their state counterparts.
 
 
 23
 The Supreme Court rejected a similar argument in Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra. Absolute legislative immunity, the Court held, does not depend "on any particular set of state rules or procedures available to discipline erring legislators." 99 S.Ct. at 1179. Nor, we conclude, should the immunity depend on a particular system of institutional checks and balances.
 
 
 24
 What is important instead is whether there are effective checks on unconstitutional conduct, whatever particular form those checks may take. Without attempting to assess their relative effectiveness, we list some of the checks that are available in a case such as this. First, rezoning may be attacked on direct judicial review as being arbitrary, capricious, or unreasonable. Wenderoth v. City of Fort Smith, 251 Ark. 342, 472 S.W.2d 74, 76 (1971). Moreover, an unconstitutional zoning ordinance may be declared invalid in federal court. See, e.g., Park View Heights Corp. v. City of Black Jack, 467 F.2d 1208, 1213 (8th Cir. 1972). Further, willful deprivations of constitutional rights under color of state law are punishable under 18 U.S.C. § 242, the criminal analog of section 1983. Imbler v. Pachtman, supra, 424 U.S. at 429, 96 S.Ct. at 994; see United States v. Gillock, 445 U.S. 360, 100 S.Ct. 1185, 1193, 63 L.Ed.2d 454 (1980) (official immunity cases have drawn the line at civil actions). Finally, the city directors of Fort Smith are elected officials "subject to the responsibility and the brake of the electoral process." Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra, 99 S.Ct. at 1181 (Blackmun, J., dissenting). The Supreme Court has considered control by the electorate to be an important restraint on legislative conduct, Tenney v. Brandhove, supra, 341 U.S. at 378, 71 S.Ct. at 789. In this respect the case for absolute immunity is stronger here than it was in Lake Country Estates, where the Court held that absolute legislative immunity covered the legislative acts of a ten-member regional land planning commission despite the fact that the members were appointed rather than elected. See 99 S.Ct. at 1180-81 (dissenting opinions of Justices Brennan, Marshall, and Blackmun).
 
 
 25
 The case for absolute immunity becomes stronger still when viewed in light of Owen v. City of Independence, supra, which re-interpreted section 1983 to make a municipality liable in damages for all of its unconstitutional conduct. 100 S.Ct. at 1409-12.[7] The absence of any immunity for city government not only provides an additional check on unlawful behavior by municipal legislators,[8] but also provides an effective remedy for wronged individuals.
 
 
 26
 In short, absolute legislative immunity for municipal legislators promotes the public good and does not eliminate an essential check on (or remedy against) unlawful governmental conduct. Because the zoning ordinance in question here was not challenged as anything but a legislative act, we must conclude the city directors are absolutely immune from damage liability for its passage. Accord, Fralin & Waldron, Inc. v. County of Henrico, 474 F.Supp. 1315, 1320 (E.D.Va.1979) (rezoning); Bruce v. Riddle, 464 F.Supp. 745, 746-48 (D.S.C.1979) (rezoning); Kent Island Joint Venture v. Smith, 452 F.Supp. 455, 458-59 (D.Md.1978) (enactment of land use ordinances); Ligon v. Maryland, supra, 448 F.Supp. at 947-48 (rezoning); Blake v. Town of Delaware City, 441 F.Supp. 1189, 1200-01 (D.Del.1977) (enactment of anti-car dump ordinance); Shannon Fredericksburg Motor Inn, Inc. v. Hicks, 434 F.Supp. 803, 805 (E.D.Va.1977) (rezoning); Shellburne, Inc. v. New Castle County, 293 F.Supp. 237, 241-44 (D.Del.1968) (rezoning).
 
 
 27
 For the contrary proposition that persons enacting municipal legislation are entitled to only qualified immunity appellants cite Wood v. Strickland, supra, 420 U.S. 308, 95 S.Ct. 942, 43 L.Ed.2d 214, Rodgers v. Tolson, 582 F.2d 315 (4th Cir. 1978), and Chase v. McMasters, 573 F.2d 1011 (8th Cir. 1978). In none of these cases, however, were the acts complained of legislative rather than executive or administrative in character. Wood involved school board officials who expelled students from school, Rodgers involved town commissioners who placed sewer lines and assessed fees for them, and Chase involved a town's councilmen and mayor who refused to connect a homeowner's sewer and water lines. The authority that does support appellants' position, e.g., Nelson v. Knox, 256 F.2d 312, 314-15 (6th Cir. 1958) (stating in dictum that municipal legislators have only qualified immunity from damages with respect to allegedly unconstitutional licensing ordinance and parking regulations), is no longer tenable, in our view, in light of Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, supra, and Owens v. City of Independence, supra.
 
 II. Immunity of Private Citizens
 
 28
 Appellants also sought to have civil liability fastened on the Fort Smith residents who, with their attorney, prevailed upon the Board of Directors to enact the allegedly unconstitutional zoning amendment. Appellants' theory of liability seems to be that the individual defendants acted under color of state law for purposes of section 1983 by participating in a conspiracy with municipal officers. See generally Adickes v. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).
 
 
 29
 The individual defendants advance several reasons for affirming the district court's dismissal of the claim against them. They urge we adopt the district court's holding that the individual defendants have derivative immunity stemming from the absolute immunity of the city officials, see Harley v. Oliver, 404 F.Supp. 450, 454 (W.D.Ark.1975), aff'd on other grounds, 539 F.2d 1143, 1145-46 (8th Cir. 1976); but see White v. Bloom, 612 F.2d 276, 281 (8th Cir. 1980) (declining to adopt a per se rule of derivative immunity). Defendants suggest we could also affirm on the basis that the complaint fails to allege defendants' conspiratorial behavior with sufficient specificity. See, e.g., White v. Bloom supra, at 281; Grow v. Fisher, 523 F.2d 875, 878-79 (7th Cir. 1975). We do not reach either of these possible grounds of affirmance, however, for we adopt the district court's holding that the private citizens and their lawyer were absolutely privileged by the First Amendment to petition for the zoning amendment that caused plaintiffs' damages.
 
 
 30
 This holding follows from principles recognized in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The Noerr Court held that mere attempts to influence the enforcement or passage of legislation are not actionable under the Sherman Act. The Court relied in large part on the desirability of avoiding the "important constitutional questions" that would arise if it imputed to Congress an intent to regulate activity covered by the First Amendment's guarantee of the right to petition government for redress of grievances. Id. at 138, 81 S.Ct. at 530. Lower federal courts have adopted this deference to the right to petition not only in antitrust cases but in other cases involving civil liability. In various contexts, these courts have held individual defendants constitutionally immune from liability for exercising their right to petition. E.g., Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1342-46 (7th Cir. 1977) (42 U.S.C. § 1985(1)) (sending to governmental employee's superiors complaints that are known to be false); Sawmill Products, Inc. v. Town of Cicero, 477 F.Supp. 636, 642 (N.D.Ill.1979) (section 1983) (protesting presence of plaintiff's sawmill which was then shut down by town ordinance); Weiss v. Willow Tree Civic Association, 467 F.Supp. 803, 816-18 (S.D.N.Y.1979) (section 1983) (lobbying town officials en masse and filing groundless judicial and administrative complaints to oppose zoning permit); Aknin v. Phillips, 404 F.Supp. 1150, 1153 (S.D.N.Y.1975) (section 1983) (urging officials to enforce unconstitutionally vague noise ordinance against plaintiff's discotheque); Sierra Club v. Butz, 349 F.Supp. 934, 938-39 (N.D.Cal.1972) (contractual interference) (filing lawsuit and administrative appeals to halt complainant's logging operation; filings constitutionally privileged even if motivated by malice).
 
 
 31
 Noerr and its progeny indicate that liability can be imposed under section 1983 for activity ostensibly designed to influence public policy only if the real purpose of the policy is not to induce governmental action but to injure the plaintiff directly. Even then, of course, the activity is not actionable under section 1983 unless taken under color of state law. These principles exonerate defendants from section 1983 liability for their conduct here, which consisted of demanding a zoning amendment and participating in the spread of false derogatory rumors about appellants' proposed housing project. The genuineness of defendants' lobbying effort is manifested by its success; demonstrably it was not a sham. And to the extent that the individual defendants' efforts and remarks were not reasonably designed to influence legislation, they were not made under color of state law for they involved no misuse of official authority.[9] This is not a case, then, like California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), where antitrust defendants had allegedly injured their competitors by engaging in a pattern of baseless administrative and judicial claims that had effectively barred plaintiffs' access to agencies and courts. Appellants here did not allege the individual defendants abused the legislative process by, for example, buying votes with bribes. Nor did appellants allege that they were prevented from answering defendants' charges or making lobbying efforts of their own. We are loathe to interpret section 1983 to proscribe what we thus understand to be traditional political activity.
 
 III. The Building Permit Decision
 
 32
 Appellants would also predicate liability on the alleged conspiracy to have the city directors decide to bar issuance of a building permit. Denial of a permit, appellants point out, is of an administrative rather than a legislative nature, e.g., Kinderhill Farm Breeding Associates v. Appel, 450 F.Supp. 134, 136 (S.D.N.Y.1978), and with respect to it the implicated public officials would have only qualified immunity. See Butz v. Economou, supra, 438 U.S. at 511-17, 98 S.Ct. at 2913-17 (type of immunity depends not on the defendant-official's particular location in government but on the nature of the governmental function he is performing).
 
 
 33
 We do not share appellants' view of the significance of the alleged building permit decision. The complaint does not allege that appellants ever prosecuted a building permit application that Fort Smith officials then denied. Nor is there an allegation that appellants were harmed by a prospective denial of the permit. Insofar as the complaint reveals, appellants' injury flowed from enactment of the zoning amendment, not from a secret administrative decision arrived at the month before. As to any official acts that appellants can complain of, then, the public official defendants had absolute immunity from personal liability.
 
 
 34
 We affirm the district court's dismissal of appellants' lawsuit, including the pendent defamation claim. "Where the federal element which is the basis for jurisdiction is disposed of early in the case, as on the pleadings, it smacks of the tail wagging the dog to continue with a federal hearing of the state claim." McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424, 427 (2d Cir. 1965).
 
 
 
 *
 The Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 The Honorable Paul X Williams, United States District Judge for the Western District of Arkansas
 
 
 [2]
 The sellers of the option to buy were co-plaintiffs in this action but do not join this appeal
 
 
 [3]
 Although the complaint includes a boiler plate request for appropriate equitable relief, the district court's opinion emphasized that appellants' action was for damages only. Gorman Towers, Inc. v. Bogoslavsky, No. 78-2121, slip op. at 1, 2, 5, 8 (W.D.Ark. Aug. 28, 1979). Appellants have not resisted this interpretation of the lawsuit and we conclude they have dropped all but their claim for damages
 
 
 [4]
 In dismissing the complaint as to all defendants, the district court expressly addressed only appellants' section 1983 claim, although the complaint also invoked 42 U.S.C. §§ 1985 and 1986. Some of the complaint's allegations might arguably be actionable under section 1985(3) even if not actionable under section 1983. See generally, e. g., Azar v. Conley, 456 F.2d 1382, 1389 (6th Cir. 1972) (slanderous remarks not actionable under section 1983 but might be integral part of section 1985(3) claim); Action v. Gannon, 450 F.2d 1227, 1229 n.2, 1231-33 (8th Cir. 1971) (en banc) (section 1985, unlike section 1983, covers conspiracies even absent action under color of state law). The district court indicated a section 1985(3) claim would not be maintainable, however, when it concluded the complaint did not allege the zoning amendment was motivated by discrimination against racial minorities, the poor, the handicapped, or the elderly. Gorman Towers v. Bogoslavsky, supra, slip op. at 4. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (section 1985(3) claim requires invidious, class-based discrimination)
 In any event, appellants have not attacked the effective disposition of their section 1985 claim (and thus their section 1986 claim as well) and we consider the issue abandoned. Fed.R.App.P. 28(a)(2), (4); United States v. Robertson, 588 F.2d 575, 577 n.2 (8th Cir. 1978). Appellants have limited their appeal to an attack on the district court's holding that the local officials are absolutely immune from a suit for damages in enacting the ordinance.
 
 
 [5]
 Appellants do not contest this specific holding. Only with respect to the city directors' alleged decision to deny a building permit do appellants argue that defendants acted in a nonlegislative capacity. See section III infra. We therefore do not decide that zoning in all its forms is necessarily a legislative act for purposes of determining the scope of official immunity. Although zoning is ordinarily a legislative function, see, e. g., Village of Belle Terre v. Boraas, 416 U.S. 1, 4, 9, 94 S.Ct. 1536, 1538, 1541, 39 L.Ed.2d 797 (1974), we note that some courts, for purposes of determining whether procedural due process is required, have decided a municipal zoning act that is legislative on its face may be construed to be administrative in character. See, e. g., City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 683-85, 96 S.Ct. 2358, 2366-2367, 49 L.Ed.2d 132 (1976) (Stevens, J., noting in dissent that several state courts have held rezoning to be quasi-judicial or administrative in nature where specific parcels and particular issues are involved); Developments in the Law, Zoning, 91 Harv.L.Rev. 1427, 1508-13 (1978). As to some reclassifications of property, then, it might be argued that municipal legislators have only a qualified immunity because they exercise only a limited discretion and do not operate under the legislator's duty to "conceive public policy from the myriad policy options open to the sovereign." Adler v. Lynch, 415 F.Supp. 705, 712 (D.Neb.1976). That argument, as we have said, is not urged here
 
 
 [6]
 The appellants note the Supreme Court has expressly reserved the question of local legislative immunity. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 1179 n.26, 59 L.Ed.2d 401 (1979). Only an absolute immunity would permit dismissal of the complaint on the basis of official immunity. Gomez v. Toledo, --- U.S. ----, ----, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980) (complaint need not allege bad faith; qualified immunity must be pleaded by defendant)
 
 
 [7]
 Although the offending conduct considered in Owen was an unconstitutional employee discharge an administrative act Owen would seem to provide a remedy for unconstitutional municipal legislation as well. See Monell v. Department of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978)
 
 
 [8]
 The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights
 Owen v. City of Independence, 100 S.Ct. 1398, 1416 (1980).
 
 
 [9]
 The result might be different under a section 1985(3) claim, which is not before us. See note 4 supra