GARTH, Circuit Judge,
dissenting:
I must dissent from the majority’s opinion, because I would hold that there exists a genuine issue of material fact as to whether Pequea Township’s actions violated Herr’s substantive due process rights and, therefore, I would remand for trial. I part company from the majority, which holds that the 1st Amendment right to petition permits the Township to use litigation and the judicial process in order to prevent Herr from developing his property. For the following reasons, in my opinion, the majority has erred:
1. Many of the actions taken by Pe-quea Township, which deliberately delayed and obstructed Herr in the development of his property, were actions which arose from other than Court proceedings and the judicial process, and thus may not be considered within the rubric of the Township’s right to petition under the 1st Amendment. In short — Herr’s evidence in support of this substantive due process claim *122 is not simply limited to the Township’s litigious behavior.
2. Pequea itself has rejected any claim or theory dependent upon the right to petition. In short — Pequea has declined to rely on any such theory even after it was encouraged to do so.
3. Even if a right to petition were relevant in this case (as the majority believes it to be), it cannot defeat or overcome an individual’s substantive due process right where the Township of Pequea has engaged in arbitrary and capricious developmental conduct. In short — -the improper motives of the Township cannot be immunized by resorting to a right to petition theory and the majority has cited to no authority which would support such aberrant jurisprudence.
a. In an effort to bolster its conclusion that Herr’s action is barred by Pe-quea Township’s right to petition — a theory to which not even Pequea itself has subscribed — the majority claims that the Noerr Pennington doctrine supports its thesis.[1] But Noerr-Penning-ton immunity applies to private, not governmental, entities, and as I have pointed out and will amplify later in this dissent, Herr’s charges encompass more than just petitioning activity. In short — Noerr-Pennington immunity may not be looked to in an effort to resolve this controversy.
4. Of even greater significance, the majority has ignored, and has not even referred to, a Third Circuit opinion relevant here. Grant v. Pittsburgh, 98 F.3d 116 (3d Cir.1996) holds, albeit in a qualified immunity context, that claims of substantive due process violations of the kind alleged by Herr require careful examination by the courts of the motive and intent of the relevant government entity involved. In short-the majority’s opinion would ignore Gmnt’s teachings, and would preclude Herr’s evidence of improper motive and intent on the basis of a right to petition. That preclusion is not recognized in our jurisprudence.
I.
It should be recalled that Herr is a landowner with property in Pequea Township. He submitted a plan for an industrial park to the Lancaster County Planning Commission (“LCPC”), which granted preliminary and final approval to his plan. According to the relevant Pequea Township ordinances, Herr’s industrial park was to be provided with public sewer service. It was only after Herr received approval from the LCPC that the Township modified its ordinances and engaged in multiple court and other actions which the record reveals were designed to prevent the development of Herr’s property in accordance with the industrial nature of the zoning approval. It did so because the Township desired the property to be used for agricultural purposes rather than the zoned industrial purposes.
Herr, whose legal position to develop an industrial property was eventually upheld by the courts of Pennsylvania,[2] faced road *123 blocks at every step of his attempts at industrial development for over eleven years. It was not just a case of litigating his rights (which he was forced to do), but it was a case where the Township, which had a very deliberate and intentional motive to prevent Herr from developing his property, obstructed Herr at every turn of the road.
Both parties tried this case to summary judgment on the issue that Herr’s substantive due process rights had been violated. Counsel for both parties rejected the majority’s suggestion that McArdle v. Tronetti, 961 F.2d 1083 (3d cir.1992), had anything to do with Herr’s predicament. McArdle is a classic malicious abuse of prosecution case, whose viability is in substantial doubt after the Supreme Court decision in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Moreover, neither counsel relied on any aspect of Pequea Township’s 1st Amendment right to petition or the Noerr-Pen-nington doctrine. Rather, both parties in this case approached the issue on appeal in a straight-forward manner — the one asserting and the other denying a substantive due process violation.
The plaintiff, Herr, contended that Pe-quea Township was motivated by a desire to retain his property as agricultural property. Herr, who had purchased the property and was “grandfathered” into the zoning of the property as industrial (so long as he developed the property within five years), claimed that Pequea Township’s acts were taken in bad faith and with an improper motive, thus preventing him from developing his property. Pequea, on the other hand, argued that motive was not an issue, and that if it had been, their motives were proper.
I suggest that this is the issue that must be resolved, not the issues manufactured by the majority on which they have decided to resolve this controversy.
II.
We have held that “non-legislative state action,” which is the type of state action at issue here, “may ... give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power.” Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir.2000) (internal quotation marks omitted). A substantive due process claim arising out of non-legislative state action has two elements: 1) “we must look, as a threshold matter, to whether the property interest being deprived is ‘fundamental’ under the Constitution,” Nicholas, 227 F.3d at 142; and 2) the plaintiff “also must demonstrate that [he] was the victim of ‘a governmental action [that] was arbitrary, irrational, or tainted by improper motive.’ ” Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124 (3d Cir.2000). Grant v. City of Pittsburgh, 98 F.3d 116, 124-25 (3d Cir.1996) adds that a court is to consider evidence of a defendant’s state of mind [here, Pequea’s] when motivation is an essential element [as it is here] of the plaintiffs [Herr’s] civil rights claim.
A
There can be no doubt that the property interest at issue here is “fundamental.” *124 “Indeed,” as we held in DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell, “one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership.” 53 F.3d 592, 601 (3d Cir.1995). Accordingly, I believe, and the majority agrees as well, see maj. op at 115, that the District Court properly held that Herr’s interest in developing his property was an interest worthy of due process protection.

B.

Because Herr has alleged a violation of a fundamental property interest, it must be determined whether Herr has suffered from “a governmental action [that] was arbitrary, irrational, or tainted by improper motive.” Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.1988). We have made clear that, “[i]n disputed factual situations, the determination of the existence of improper motive or bad faith is properly made by the jury as the finder of fact.” Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124 (3d Cir.2000). We also observed in Woodwind that “we have not hesitated to vacate a grant of summary judgment or a judgment as a matter of law where the evidence at least plausibly showed that the government took actions against the developer for indefensible reasons unrelated to the merits of the zoning dispute.” 205 F.3d at 124. In this context, “the intentional blocking or delaying of the issuance of permits for reasons unrelated to the merits of the permit application violates principles of substantive due process and is actionable under § [1]983.” Woodwind, 205 F.3d at 124-25.
Looking at the facts in the light most favorable to Herr, because it was Pequea Township, the defendant, which had moved for summary judgment, I believe that a rational jury could and would certainly find that the Township intentionally blocked or delayed Herr’s development of his property “for reasons unrelated to the merits” of his development plan. Indeed, the evidence suggests that the Township used every effort — -including access to the courts — to hinder development of Herr’s land.
There is extensive evidence from which a jury could find that the Township acted arbitrarily, irrationally, or with improper motive. Alan S. Peterson (“Peterson”), Chairman of the Pequea Township Environmental Advisory Council, sent numerous letters in 1990 to such places as the Nature Conservancy, the Pennsylvania Historical and Museum Commission, the Pennsylvania Game Commission, and the Pennsylvania Fish Commission, asking them to review Herr’s proposal “for possible endangered species or other environmental rarities,” “for possible historical or archaeological significance,” and “for ... species of special concern.” (App.612a-615a.) Peterson also sent another round of letters in early 1992 to the Lancaster Water Authority, the Pennsylvania Power & Light Company, the Suburban Lancaster Sewer Authority, and Department of Transportation, among others, informing them about concerns related to Herr’s proposal. (App.616a-622a.) Additionally, Virginia K. Brady (“Brady”), a member of the Township Board of Supervisors and a defendant in this action, sent similar letters in October 1993 to the Department of Transportation, the Bureau of Dams and Waterways, the Department of the Army, and the Lancaster City Engineer in October 1993. (App.638a-641a.)
Peterson sent a letter to Eugene Dice, an attorney, stating:
Only Virginia Brady and I in the township know the following: (Do not state this back to the township in any manner). The owner must sell the lots, then *125 all the land development plans must be approved by 10M or they become nonconforming lots in the Ag. District. Obviously the longer we can stall (if we can’t mn this with DER), the better.... We want this defeated after our four year struggle!
(App. 374a-375a (emphasis added).)
Brady stated at her deposition: “Development is not bad. However, to put — -and this is a personal opinion — to put development on prime agricultural soils is not right, and that is a personal belief I have had for many, many, many years.” (App. 216a.). Additionally, Brady was quoted in a 1997 newspaper article, regarding the “battle” between Herr and Pequea Township over his development plan, as stating: “We already have an industrial park,” and “I am opposed to paving over any prime agricultural land.” (App.585a-586a.) Bruce Groff, another member of the Board of Supervisors and a defendant in this action, was quoted as saying that “support [for rural preservation] is desperately needed to deter recent and future horrendous proposals being prepared by developers.” (App.379a.)
Herr received a letter in April 1999 from Robert G. Sneath, whose company had been a potential buyer of space at Herr’s proposed industrial park, in which Mr. Sneath requested that Herr release him from the agreement of sale, explaining:
My Associate, Glenn Warfel, talked to the zoning officer about our plans. His name is Wes Brocknoe ... Glenn was informed that your plans were under litigation and the land was still zoned agricultural by Pequea Township. The zoning officer was not at liberty to talk about it. With timing important to us, this was not encouraging.
(App.210a.) Mr. Sneath also stated, “Quite frankly, everything I have heard about dealing with Pequea Township is negative. I have no desire to invest my money in a township with a negative attitude. It looks like this development could take forever to be approved by the township.” (App.210a.)
In light of this evidence, it is clear to me that the issue of whether the Township had an improper motive must be sent to the jury. Indeed, it is inconceivable to me how the District Court could have held otherwise. The District Court analyzed the evidence without regard to the fact that the issue of improper motive was before the court on a summary judgment motion, in which the court was required to draw all reasonable inferences in Herr’s favor. Instead, the District Court several times drew inferences in Pequea Township’s favor in direct contravention of the summary judgment standard.
For instance, the District Court drew the following conclusions from the evidence: 1) “the reasonable inference to be drawn is that Defendants wished to zone [another land parcel which was permitted to remain industrial] consistently with its current use, rather than carry out the pointless exercise of changing the zoning to agricultural but grandfathering the preexisting industrial use”; 2) “there is no evidence before us that Defendants knew they could not stop development of Mill-wood Park, yet acted merely to delay and harass Plaintiff’; 3) “the mere fact that Dr. Peterson claims that Virginia Brady was aware of the time limit imposed by [the grandfather clause under which Herr’s land was zoned industrial] does not imply an improper motive on her part”; 4) there was “no basis for an inference that Defendants pursued the sewer litigation for any purpose other than a genuine desire not to have Millwood Park come about in the form proposed by Plaintiff’; and 5) “[t]here is no basis to determine what the *126 true motives [of the Township] were.” (App.21a-25a.)
Additionally, I should note that a motive on the part of the Township to prevent industrialization of land, ie., “not to have Millwood Park come about in the form proposed by Plaintiff,” (App.25a), is not related to the merits of the zoning dispute between Herr and the Township. Herr had already submitted his plan to a separate governmental entity (the LCPC), which approved Herr’s plan before the Township could pass legislation which would prevent the proposed development. The fact that the Township properly enacted new zoning and sewage ordinances with the goal of reducing development does not mean that its actions to attempt to defeat a development plan that had legitimately escaped its regulation were proper. Indeed, in my view, the Township’s motive in enacting new ordinances and plans relating to land use is irrelevant, and the District Court erred in considering it.
III.
The majority holds that the Township’s litigation-related actions are protected by the 1st Amendment right to petition and that, therefore, they cannot form the basis of Herr’s substantive due process claim. Holding that Herr could not prove any injury without these actions, the majority affirms the District Court’s summary judgment dismissal of Herr’s substantive due process claim. I cannot agree with this holding because the right to petition does not bar substantive due process liability for litigation arbitrarily and irrationally initiated by a governmental entity.

A. Pequea’s Actions Other and Apart from Litigation

As an initial matter, Herr’s evidence in support of his substantive due process claim is not simply limited to the Township’s litigious behavior. Herr presents evidence of a litany of conduct by the Township above and beyond its litigation activity over a span of eleven years — all of which was purportedly designed to delay and block the industrial development of Herr’s land.
This evidence includes: (1) proof of the Township’s campaign since 1990 to find problems with, or raise unfounded concerns about, Millwood Industrial Park with the hope that the problems raised would lead to delays leading past the five-year grandfather period; (2) proof of the Township’s “extra scruntiny” of Herr’s applications in an effort to delay the development past the five-year period; (3) proof of the Township’s denial of Herr’s applications for public sewer service motivated by reasons unrelated to water-quality issue but rather by Pequea’s desire to hold up Herr’s development; and (4) proof that the Township’s issuance of an enforcement notice was part of a campaign to delay development. This conduct has nothing to do with litigation or petitioning activity before the LCPC or state courts, and therefore — • even assuming the majority’s right to petition is correct — it would not be immunized by the 1st Amendment.

B. Counsel’s Rejection of Pequea’s Petitioning Right

Next, Pequea Township itself has rejected any claim or theory dependent upon the right to petition, declining to rely on any such theory even after it was encouraged to do so. Not only was this theory never raised, entertained or discussed by the very party to whose benefit it would redound, but when asked for supplemental memoranda pertaining to that issue, both Herr and Pequea declined to embrace or rely on such a theory. They did so because both parties recognized that this *127 case was a garden variety substantive due process proceeding.
Likewise, the majority’s reliance upon McArdle v. Tronetti 961 F.2d 1083 (3d Cir.1992)—which it urged upon the parties — is inapposite. There, we analyzed the plaintiffs § 1983 claim as a malicious use of civil process claim in violation of his 14th Amendment rights. Referring to Lee v. Mihalich, 847 F.2d 66 (3d Cir.1988), and its progeny, we reasoned that “a claim of malicious use of process may state a § 1983 claim if it includes the elements of that 30 common law tort as it has developed.” McArdle, 961 F.2d at 1088. Accordingly, we required that such a claim requires proof that (1) the defendant “acted in a grossly negligent manner or without probable clause and primarily for a purpose other than that of securing the proper ... adjudication of the claim in which the proceedings are based; and (2) the proceedings have terminated in favor of the person against whom they are brought.” Id.
Setting aside the issue of McArdle’s questionable viability after the Supreme Court decision in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994),[3] the majority, by claiming that “Herr’s § 1983 claim against the defendants in this case is analogous to the common law tort of malicious use of civil process by a state actor,” see maj. op. at 118, again directly contradicts the repeated and equivocal positions of both Herr’s and the Township’s counsel that Herr’s claims were not malicious use of process claims. Indeed, in a Supplemental Letter Brief dated June 1, 2000 (ordered by this Court), the Township specifically conceded that:
the McArdle principles do not apply to the instant appeal.... Because the issues regarding abuse of process have not been raised by [Herr] in the instant appeal and because [Herr] has not produced evidence to allow a finding of abuse of process, [the Township] argues that McArdle has no relevance to the instant appeal.... [T]he principles of McArdle have no determinative effect on this Honorable Court’s ability to decide that there is insufficient evidence of record to support a reasonable jury finding of a substantive due process violation.
Similarly, Herr agrees that his claims are not malicious use of process claims. While I acknowledge that we should recognize the correct jurisprudence even if counsel declines to do so, we should not, as the majority has done here, devise our own theory of liability (or immunity) after counsel has deliberately rejected that theory, particularly since it is flawed and lacks support in our jurisprudence. Indeed, I think it is inappropriate and improvident to substitute a panel’s theory for counsel’s, particularly when it is obvious from our own jurisprudence that the issue of improper motive in a substantive due process case is one for the jury and not for the judge. See Woodwind, 205 F.3d at 124; Grant, 98 F.3d at 124-25.
Nevertheless, even if McArdle were applicable, Herr’s claims (as discussed previously) encompass more than just abuse of process. Rather, his claims are based upon specific evidence showing that the Township blocked and delayed the industrial development of his land at every possible turn. The use of the court system is *128 just one, albeit important, evidentiary example of the Township’s tactics. Accordingly, the holding in McArdle — even if applicable — is too circumspect to be of value as to Herr’s claims of substantive due process.

C. A Right to Petition Cannot Trump Illegal Municipal Actions and Cannot Defeat a Legitimate Substantive Due Process Claim

Even if a right to petition were relevant in this case, it cannot defeat or overcome an individual’s substantive due process right where evidence has been presented that the Township of Pequea has engaged in arbitrary and capricious behavior. The improper motives of the Township cannot be immunized by resorting to a right to petition and the majority has cited to no authority which would support such aberrant jurisdiction.
Though it is true that the First Amendment encompasses a right to petition, this right is “not absolute.” San Filippo v. Bongiovanni, 30 F.3d 424, 435 (3d Cir.1994). Additionally, the doctrine of substantive due process does not require that the actions taken by the government be illegal to constitute a due process violation. Instead, substantive due process “protects individual liberty against ‘certain government actions regardless of the fairness of the procedures used to implement them.’ ” Collins v. Harker Heights, 503 U.S. at 125, 112 S.Ct. 1061 (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) (emphasis added). Indeed, courts have repeatedly explained that substantive due process protects against “the arbitrary exercise of the powers of government.” Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir.1988) (internal quotation marks omitted). Implicit in this statement is that the actions that form the basis of substantive due process claims are actions that are within the government’s power but nevertheless may be constitutional violations in a particular case because of the government’s motive in exercising that power.
Accordingly, because of this clear indication in substantive due process jurisprudence that it is not the government’s legal authority to exercise its power but its motive that is relevant in analyzing a substantive due process claim, I cannot agree with the majority’s holding that the Township did not violate Herr’s substantive due process rights simply because its actions were protected by the right to petition.
By immunizing motive and intent whenever there is petitioning activity on the part of the government, the majority effectively renders the 14th Amendment powerless, turning it into mere surplusage any time improper litigious activity by a municipality is asserted. This “would essentially insulate government officials from liability for the very harm our substantive due process precedents have sought to redress: using government authority to take actions that, because of the improper motives of public officials, have no rational relationship to a legitimate government purpose.” Grant, 98 F.3d at 125 (emphasis added).
In this way, the right to petition — which, by the majority’s reasoning, virtually always defeats any evidence of a substantive due process violation — would insulate the Township from the very arbitrary and capricious governmental conduct that is meant to be protected by the 14th Amendment. By this reasoning, the right to petition would also immunize a municipality of liability under the Equal Protection Clause — also a 14th Amendment claim— notwithstanding evidence that a particular municipality had pursued delay litigation tactics because of an individual’s race or religious beliefs, just so long as it could *129 articulate some non-frivolous justification to support its lawsuit. Such a result is clearly contrary to our constitutional jurisprudence.
D. Noerr Pennington is Not Applicable and Not Relevant to Government Misconduct
In an effort to bolster its conclusion that Herr’s due process claim is barred by the Township’s right to petition, the majority claims that the Noerr-Pennington doctrine supports its thesis. In our most recent exposition of the doctrine, we have described Noerr-Pennington immunity as follows:
Under the Noerr-Pennington doctrine, private parties may be immunized against liability stemming from antitrust injuries flowing from valid petitioning. This includes two distinct types of actions. A petitioner may be immune from the antitrust injuries which result from the petitioning itself. Also ... parties are immune from liability arising from the antitrust injuries caused by government action which results from petitioning.
A.D. Bedell Wholesale Company, Inc. v. Philip Morris Inc., 263 F.3d 239, 251 (3d Cir.2001) (citations omitted). “Rooted in the First Amendment and fears about the threat of liability chilling political speech,” the Noerr-Pennington doctrine generally insulates a private entity which petitions the government for redress from antitrust liability “even if there is an improper purpose or motive” behind the petitioning activity. Id. at 250 (emphasis added). We have also noted that “the immunity reaches not only to petitioning the legislative and executive branches of government, but ‘the right to petition extends to all departments of the Government,’ including the judiciary.” Id. (quoting California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)).
The Noerr-Pennington doctrine, and the rationale behind it, however, is not applicable here. First, in this case, it seeks to immunize too much. Because Herr’s charges include more than appropriate petitioning activity on Pequea’s part (see Section III.A., supra), the application of Noerr-Pennington here cannot insulate or immunize Pequea from Herr’s claims.
Second, and more importantly, however, Noerr-Pennington immunity applies to private parties — not governmental entities — seeking redress from the government. See Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1082-84, 1086 (applying Noerr-Penning-ton protection to private cable operator against antitrust, tort and § 1983 co-conspirator liability, but noting as to municipal liability that “Noerr-Penning-ton protection does not apply to the government”); see also Professional Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc., 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (protecting private movie companies against antitrust liability); Bill Johnson’s Restaurants, Inc. v. NLRB, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) (extending 1st Amendment protection to private employer who filed lawsuit against former employee allegedly in violation of the National Labor Relations Act); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (refusing to apply 1st Amendment protections to private trucking company because it fell within “sham” exception); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir.1980) (immunizing private defendants against § 1983 liability on the basis of Noerr-Pennington protec *130 tion, but holding public officials immune on grounds other than Noerr-Penning-ton immunity); State of Missouri v. National Organization for Women, 620 F.2d 1301 (8th Cir.1980) (protecting private women’s organization against antitrust liability); Stern v. United States Gypsum, Inc., 547 F.2d 1329 (7th Cir.1977) (protecting corporation and its officers against § 1985 liability). To the extent that the majority has cited one case that could arguably be seen as extending this immunity to a governmental entity, the protection immunized the party only against statutory liability, not against a constitutional deprivation. See Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital, 185 F.3d 154 (3d Cir.1999).[4]
Accordingly, the application of the Noerr-Pennington doctrine cannot resolve, and cannot be analogous to, the following conflict: whether a governmental entity’s [Pequea’s] 1st Amendment right to petition always trumps an individual citizen’s [Herr’s] 14th Amendment due process right to be free from arbitrary and capricious government activity.[5] The majority provides no authority extending Noerr-Pennington to conduct by government entities which have been shown to have acted in violation of constitutional restrictions. Nor do I know of any authority purporting to extend Noerr-Penning-ton in such a way so as to per se defeat an individual's constitutional rights under the 14th Amendment.
One of the cases cited by the majority, Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155 (3d Cir.1988), involved a nursing home operator that filed state tort claims against two private individuals and a public official. There, the nursing home alleged that the defendants improperly scrutinized its operations through a publicity and letter-writing campaign which ultimately led to its loss of license. This Court affirmed the district court’s grant of summary judgment against the nursing home because it failed to “raise a material issue of fact” on its state law claims of tortious interference with business relations and civil conspiracy. Id. at 159 (emphasis in original). Specifically, we agreed with the district court that the plaintiff failed to show that the defendants actions were “unlawful” or “improper” (as required by those torts) since the Pennsylvania courts had conclusively determined that the revocation of the home’s license was warranted “because of its serious violations of nursing home standards.” Id.
Invoking, by analogy, the principles underlying defamation cases, e.g., New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and Noerr-Pennington cases, we held that the defen *131 dants’ actions “in calling [plaintiffs] violations to the attention of state and federal authorities and eliciting public interest cannot serve as the basis of tort liability.” Brovmsville, 839 F.2d at 160. This ruling is a far cry from the situation in this case wherein Herr has presented credible evidence showing that the Township’s motivations behind its delay tactics and in litigating the “sewer” issue were prompted by a desire to thwart Herr from his rightful claim to develop his property as well as a scheme to delay Herr sufficiently such that his five-year grandfather period would expire. In addition, unlike the allegations made in Brownsville, Herr’s claims sound in direct constitutional authority and not in state common law or statutory liability.

E. Grant v. Pittsburgh

Finally, by disregarding evidence of the Township’s motive and intent, the majority has ignored our holding in Grant v. Pittsburgh, 98 F.3d 116 (3d Cir.1996). There, Grant (a land developer) brought suit against certain city officials under § 1983 alleging, inter alia, violations of his substantive due process rights. In particular, Grant claimed that the nomination by city officials of two buildings for historic preservation under the Pittsburgh Historic Structures, District, Sites and Objects Ordinance, Pittsburg, Pa.Code Title 1007, § 513, effectively prevented the buildings from being demolished and thereby thwarted Grant’s plans to develop the property on which the buildings were located. Grant alleged that the nomination was not motivated by public interest, but rather by partisan and personal politics having no bearing on the historic preservation of the buildings. The defendants claimed qualified immunity.
The district court, failing to consider each defendant’s role individually in the alleged conduct, nonetheless denied the officials’ summary judgment motion based upon qualified immunity. This Court remanded the qualified immunity issue for reevaluation as to the specific conduct of each defendant, but specifically noted that “courts are not barred from examining evidence of a defendant’s state of mind in considering whether a plaintiff has adduced sufficient evidence to withstand summary judgment on the issue of qualified immunity, where such state of mind is an essential element of the constitutional violation itself.” Id. at 124 (citations omitted). In particular, our Court specifically recognized that,
[t]he substantive due process violation alleged in this case is precisely the sort of claim where clearly established law makes the conduct legal or illegal depending u-pon the intent with lohich it is performed. By their very nature, substantive due process claims of this kind involve the application of otherwise legitimate government machinery to achieve an illegitimate end.... [W]hen the same officials invoke administrative processes with an illicit purpose, they are violating substantive dtie process guarantees and, at the same time, ‘clearly established’ law.
Id. at 125 (citations omitted) (emphasis added). Although decided in the context of qualified immunity, Grant expressly recognizes and acknowledges that substantive due process claims often involve the use of legitimate governmental processes by government officials for illegitimate ends, and that the proper inquiry focuses not upon the propriety of the processes utilized, but rather upon the motives of the officials involved.
Here, the very essence of Herr’s substantive due process allegations depend upon the motives behind the actions taken by the Township and the individual defendants. As already discussed (see Section *132 II.B., supra), Herr has presented particularized and specific evidence which — if credited' — could reasonably lead a jury to conclude that the actions by Pequea Township in this case were motivated by illicit purposes, and thereby violated Herr’s substantive due process rights under the 14th Amendment.
IV.
The District Court noted that “we believe Defendants are entitled to qualified immunity.” (App.30a.) The Supreme Court stated in Harlow v. Fitzgerald: “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). I would hold that the defendants here should have known that their actions may have violated Herr’s substantive due process rights and, therefore, they are not entitled to qualified immunity. However, because I am satisfied that the issue of “improper motive” must be returned for jury determination, even though I believe that the Township has violated Herr’s constitutional right and that the right was clearly established at the time of the violation, I would hold that the qualified immunity issue should be addressed not by us but in the District Court.
Such a holding would be consistent with our holdings in Blanche Road Corp. v. Bensalem Township and Woodwind, both of which involved substantive due process challenges to governmental interference with land development plans. In Blanche Road, we stated:
In the instant case ..., when the evidence is viewed in the light most favorable to plaintiffs, it is clear that defendants could not have reasonably believed that their conduct did not violate [plaintiffs’] [6] rights. If defendants, for reasons unrelated to an appropriate governmental purpose, intentionally conspired to impede the development of the Blanche Road project, by ordering that Blanche Road’s applications be reviewed with greater scrutiny in order to slow down the development and by ordering that efforts be taken to shut down the development, such an arbitrary abuse of governmental power would clearly exceed the scope of qualified immunity. Accordingly, the defense of qualified immunity is not available to defendants in the instant matter.
57 F.3d 253, 269 (3d Cir.1995). Similarly, we held in Woodwind that: “In the instant case ..., when the evidence is viewed in the light most favorable to plaintiff, it is clear that the supervisor defendants could not have reasonably believed that their conduct did not violate plaintiffs rights.” 205 F.3d at 125.
I believe that the defendants in this case have even less claim to qualified immunity than the defendants in Blanche Road. If the right to be free from state intervention with land development was clearly established when Blanche Road was decided (in 1995), it is even more clearly established now in light of the Third Circuit’s decision and holding in Blanche Road.
V.
I would reverse the District Court’s grant of summary judgment to Pequea Township and remand the case for trial, *133 because Herr has a fundamental property interest; there is a genuine issue of material fact as to whether the Township acted with an improper motive; and the Township’s delay tactics, including its initiation of litigation, is not protected from substantive due process analysis by any claimed right to petition. Because the majority of the panel holds otherwise, I respectfully dissent.

. Named after two Supreme Court cases, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), Noerr-Pennington immunity protects private parties from antitrust liability flowing from valid petitioning activity to the government.

. The majority provides that the Township's "basic position in the sewer litigation that Herr had no vested rights to municipal sewer services under the 1971 sewage facilities plan was ultimately sustained by the Commonwealth Court," and therefore was a "winning argument.” Maj. op. at 119. This reading by the majority, however, does not tell the whole story. In fact, the Commonwealth Court— *123 while disagreeing with the Environmental Hearing Board and ruling that the protection offered to a developer’s approved plan under S 508 of the Pennsylvania Municipalities Planning Code did not apply to sewage facility plans — nevertheless found the Board's error to be harmless and ruled in favor of Herr. See Pequea Township v. Herr, 716 A.2d 678, 684-85 (Pa.Commw.Ct.1998). Indeed, the Commonwealth Court agreed that “Herr had established that [Pequea Township's] 1992 sewage plan was inadequate to meet Herr's sewage disposal needs,” and upheld Herr’s right to municipal sewage services from Pequea. Id. at 685.

. The Supreme Court’s holding in Albright— which suggested that a malicious, prosecution claim must be anchored in explicit constitutional text, such as the Fourth Amendment, rather than generalized notions of due process — has cast doubt on the viability of Lee v. Mihalich and its progeny, including McArdle. See, e.g., Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir.1998) (‘‘[Albright] has created great uncertainty in the law” of malicious prosecution under § 1983 and Bivens).

. In Armstrong, Noerr-Pennington protection was afforded to a hospital and its staff physicians from antitrust liability under the Sherman Act.
While the caption of that case suggests that the hospital may have been a county hospital, the issue of whether it was "municipality” or a "government entity” was never addressed. Indeed, the opinion itself appears to have referred to the defendant hospital as a "private party” a number of times, and explicitly characterized the Noerr-Pennington immunity as an "immunity for private parties.” See, e.g., id. at 159-61, 162 (emphasis added).

. It is axiomatic that government entities, unlike private citizens, are limited by the Constitution from certain conduct in ways that individuals are not {see, e.g., the Due Process Clause and the Equal Protection Clause). Therefore, providing a private citizen an absolute per se immunity arising from his or her 1st Amendment right to petition is far different than providing such an absolute constitutional right to a governmental entity such as Pequea Township.

. The text of the opinion says "defendants' rights,” but this is clearly a typographical error.